## Kentucky-Elkhorn Coal Corporation v. France, et al.

(Decided December 18, 1925.)

### Appeal from Pike Circuit Court.

1. **Appeal and Error—Supreme Court will Not Consider Failure of Trial Court to Take Action on Materialmen's Lien where it was Not Complained of.**—Where plaintiff appellee does not complain of failure of trial court to take action relative to materialmen's lien asserted in petition, Supreme Court will not consider it on appeal.

2. **Appeal and Error—Defendant is Estopped to Complain in Supreme Court of Misjoinder of Parties After Failure to File Special Demurrer in Lower Court.**—Where defendant failed to file, in lower court, special demurrer to petition because of alleged misjoinder or defect of parties, it is estopped to complain in Supreme Court, and such misjoinder will be treated by Supreme Court as having been waived.

3. **Logs and Logging—Evidence Held to Sustain Contentions of Plaintiff as to Breach of Contract for Cutting and Hauling Timber.**—In action to recover damages for breach of contract to cut and haul timber to sawmills, evidence, while conflicting, held to more strongly sustain contentions of plaintiff than of defendant.

4. **Appeal and Error—Great Weight will be Accorded Findings of Fact by Chancellor on Appeal in Case of Conflicting Evidence.**—While

ordinarily in equitable action appellate court will not be bound by chancellor's findings of fact, yet in case of conflicting evidence great weight will on appeal be accorded such findings.

5. Work and Labor—Holding that Recovery on Quantum Meruit could be Had for Breach of Contract to Cut and Haul Logs Proper.— Where chancellor's findings of fact were that contract for cutting and hauling logs to mill was breached by owner of mill, thereby preventing performance, holding that plaintiff was entitled to recover on quantum meruit was not error.
on quantum meruit was not error.

ROSCOE VANOVER for appellant.

F. W. STOWERS for appellees.

Opinion of the Court by Judge Settle—Affirming.

The appellees, Walter France, Drew Ratliff and Isaac Ramsey, sued the appellant, Kentucky-Elkhorn Coal Corporation, in the court below, alleging its breaching of a written contract it made with the appellee, France, February 23, 1921, and seeking the recovery of damages therefor. The appellees, Ratliff and Ramsey, were joined as plaintiffs in the action for the reasons, as alleged in the petition, that as they by employment of France, under authority conferred by the contract, undertook to aid him in performing his part thereof and, in fact, did assist him in performing it to the extent permitted by the appellant, they thereby became jointly interested with him in the compensation he was entitled to receive for its part performance; and likewise, to such damages resulting from its violation by the appellant, as he might be entitled to recover of the latter, the whole amounting to $635.00, for which judgment was prayed.

The action was brought in equity, presumably, because the petition also asserted and prayed for the enforcement of a materialman's lien in favor of the appellees upon the timber of the appellant severed, as well as that delivered by them under the contract and upon such ties and lumber made therefrom as remained in its possession, for the payment of whatever sum might be adjudged appellees by way of compensation, or damages, on the trial of the action.

The contract in question is as follows:

"This Memorandum of an agreement made and entered into on this the 23rd day of February, 1921, by and between Kentucky-Elkhorn Coal Corpora-

tion, a corporation existing and doing business under the laws of Kentucky, hereinafter known as 'company,' party of the first part, and Walter France, of Elkhorn City, Praise P. O., Pike county, Kentucky, hereinafter known as the 'contractor;' party of the second part, witnesseth:

"The company being the owner of one certain tract or boundary of timber lying on the tributaries of John Moore's branch, Pike county, Kentucky, and desiring to manufacture the said boundary of timber into railway crossties and other mill products, and transport the said mill products to the C. & O. Railway right of way at or near the tipple of the said company, doth this day enter into this solemn agreement with the contractor as follows:

"For and in consideration of the sum of sixty cents (60c) per tie, which will be acceptable to the railway company or other purchaser when delivered as above stated, and further in consideration of the payment of fifteen dollars ($15.00) per thousand, board measure, for all lumber other than crossties which the company may designate to have delivered and piled at or near its said tipple, the contractor agrees to do all the work, furnish all teams, material and labor necessary to cut and skid all such timber as may be designated by said company to its said mill, which said mill will be installed in the above mentioned boundary, and to keep said mill constantly supplied with timber from said boundary, and the contractor further agrees to bind himself uider the above mentioned consideration of sixty cents per tie and fifteen dollars per thousand feet for lumber to deliver said ties and timber to the railway, and to stack properly said ties along the railway at a place or places designated by the company, the said ties and lumber to be taken from the mill as manufactured and delivered promptly to the railway right of way in the manner herein specified, and stacked in the following manner: All ties to be stacked according to grades and sizes and in a manner to be designated by the company, and all lumber to be neatly piled.

"The company agrees to advance to the contractor a sum of money every two weeks sufficient to pay for labor of cutting timber, which advanced sums of

money are to be deducted from the contractor's settlement from time to time.

"The company agrees to pay to the contractor every two weeks whatever may be due on ties and lumber which has been delivered and properly stacked at the railroad as hereinbefore stated.

"It is thoroughly understood and agreed that the company will build whatever road necessary to move its said mill to the site and will stand no expense whatever in connection with upkeep of said road.

"The contractor agrees to supply an acceptable bond in the sum of five hundred ($500.00) dollars, to cover advances of money for labor as herein specified and as an evidence of good faith in the full performance of this contract.

"The company agrees to grade the ties at the mill in order that contractor's teams may not haul any ties that will not be accepted by the railway.

"This contract may be terminated on April 15th at the option of the company, and the contractor agrees to have all timber which has been cut in shape to saw and deliver to the railway not later than April 10th, if notified that the job is to stop on April 15th.

"In witness whereof we have hereunto affixed our signatures on this the  day and in the year first above written.

"Ky.-Elkhorn Coal Corp.
Walter France.
"J. M. Moore, witness."

The appellant filed an answer and counterclaim, in the first paragraph of which it admitted the due execution of the contract set out in the petition, but traversed all other affirmative averments of that pleading. In the second paragraph, by way of counterclaim, it was alleged that the contract was violated by the appellee, Walter France, with whom it was, as claimed, alone made, whereby the appellant was, as further alleged, damaged to the amount of $1,000.00, and for this amount judgment was asked on its counterclaim.

All affirmative matter of the answer and counterclaim was controverted of record; and the submission of the case in the trial court upon the pleadings, exhibits and evidence taken by the parties resulted in a judgment whereby the appellees recovered of the appellant $635.32,

the full amount of compensation, or damages, claimed in the petition, with six per cent interest from March 6, 1924, the date of the rendition of the judgment, until paid, and their costs expended in the action. The appellant complains of that judgment and by this appeal seeks its reversal.

It will be observed from a reading of the judgment that it neither allows the materialman's lien asserted by the appellees, nor the counterclaim asserted by the appellant, the judgment being silent as to each of these matters. And as the former does not complain of the failure of the trial court to take action as to the lien that matter will not be considered by us on this appeal.

The appellant's first complaint, however, is as to the court's permitting Ratliff and Ramey to join in the action as co-plaintiffs with France and making them joint beneficiaries with the latter in the judgment rendered, it being insisted that as the contract in question was made by the appellant with the appellee France alone, and they were mere employes of the latter in its performance, they had no such rights under the contract as gave them a cause of action against the appellant for its violation, and, therefore, should not have been joined with France as plaintiffs in the action brought by him, or made beneficiaries of the judgment rendered therein. On the other hand, it is claimed by the appellees that as by the terms of the contract the contractor, France, had the right to associate with him assistants in the doing of the work, the appellant cannot complain that he, France, agreed to share with them the compensation or profits that might result from its performance, and thereby make them beneficiaries of the contract and parties thereto. With respect to this question it is only necessary to say, that as the appellant failed to file in the court below a special demurrer to the petition because of the alleged misjoinder or defect of parties complained of, it is estopped to complain in this court of such misjoinder, and the same, therefore, will be treated by us as having been waived.

Briefly stated, by the terms of the written contract in question the appellee, France, contracted with the appellant to cut from a large tract of land in Pike county owned by the latter all timber suitable for railroad crossties and lumber, "slip it to the hitching ground," haul it in logs to the appellant's sawmill and from the mill, after the sawing of the logs, haul the ties and lumber to the railroad for shipment. For this work appellant agreed

to pay the contractor, France, 60 cents per crosstie for all ties sawed from the logs, and $15.00 per thousand feet for all lumber sawed therefrom; and in addition advance to him every two weeks, during the progress of the work, money sufficient to pay for the labor of cutting the timber. Also to pay him every two weeks whatever might be due him on ties and lumber that had been delivered and properly stacked at the railroad.

It will be further observed that the contract concludes with this provision:

> "This contract may be terminated on April 15th, at the option of the company, and the contractor agrees to have all timber, which has been cut, in shape to saw and deliver to the railway not later than April 10th, if notified that the job is to stop on April 15th."

It is admitted by the parties that a letter, of which the following is a copy, was received April 4, 1921, by the appellee, Walter France, from the president of the appellant company:

"Praise, Kentucky, April 4, 1921.

"Mr. Walter France,
Praise, Kentucky.

"Dear Sir:

"Under the terms of our agreement, dated February 23rd, 1923, you are hereby notified not to have any more timber cut, and to deliver all timber which you have had cut, to our mill within ten days from this date.

Yours truly,
President."

It is the contention of appellees that they were properly progressing with the work required of them by the contract, until interrupted by the failure of the appellant to saw the timber as delivered at its mill and its notice of April 4, 1921, advising them of its intention to terminate the contract April 15, 1921. And that from the time the appellant set up and began to operate its sawmill, down to the time it ceased to be operated, they, as required by the terms of the contract, kept it constantly supplied with logs suitable for being sawed into crossties and lumber, all obtained from the timber cut on the appellant's land. But that during the time referred to, and after the appellant's giving of the notice mentioned, the appellees were

frequently prevented from delivering logs at the mill because of the mill yard's being crowded with logs previously delivered by them and which appellant had failed to saw; and that from April 1 until April 15, the date fixed by its notice of April 4, to France for the termination of the contract, the operation of the appellant's sawmill was practically discontinued. But that if it had, as required by the contract, operated the sawmill to its full capacity during the time mentioned and until April 15, or even until April 10, the date named in its notice to France for the delivery at the mill of all tie and lumber logs cut by him, the appellees would thereby have been afforded time to complete both the cutting of the remaining standing timber and its delivery, with that previously cut and undelivered, at the sawmill by April 10, and the appellant ample time to complete the sawing of the whole in time to enable the appellees to haul the ties and lumber produced therefrom to the railroad by April 15, as required by the contract between the parties.

On the other hand, it is the contention of the appellant that prior to April 4, the date of the appellee France's receiving the notice of the appellant's election to terminate the contract between them on April 15, he and his co-appellees violated its terms by failing to keep the appellant's mill at all times supplied with logs to be sawed into ties and lumber, as he had therein undertaken to do. And, also, that France and his co-appellees again violated the contract after he received the notice referred to, by failing to deliver at the mill to be sawed not later than April 10, all timber cut by them under the contract; although, as alleged, at the time of receiving the notice, they had previously cut and had, besides what logs were in the mill yard, on the hitching ground, and in the hills, more timber than they could have delivered at the mill, or the mill could have sawed by April 10, or hauled to the railroad by April 15.

The damages sought to be recovered by the appellant upon its counterclaim arose, as therein alleged, out of the appellees violating the contract, partly by failing before the appellee, France, received notice of the appellant's election to terminate the contract April 15, to keep its sawmill supplied with timber; but mainly because of their cutting on the appellant's land during the continuance of the contract more timber than they could deliver or the appellant saw, by April 10, which timber, by reason

of its being left on the ground and exposed to the weather was so injured as to greatly lessen its value.

The judgment of the circuit court awarded the appellees no recovery of damages for the loss of contemplated profits resulting from the appellant's alleged violation of the contract in the particulars mentioned, but confined the relief granted them to a recovery on the *quantum meruit*. That is, the judgment put on the appellant the blame of violating the contract and thereby preventing the appellees from fully performing the undertakings therein assumed by the appellee, France, but allowed them reasonable compensation for the work actually done by them in attempting to perform those undertakings, and to the extent only that they were performed.

The compensation thus allowed is a third less than the prices fixed by the contract for the same work. The amount of compensation allowed the appellees by the judgment, viz., $635.62, seems to have been arrived at by the court from a fair consideration of the evidence contained in the depositions taken by the parties, and an itemized written statement of account, prepared by disinterested persons, made a part of the petition and put in evidence, which showed not only the quantity of timber cut by the appellees, what part thereof was delivered at the appellant's sawmill and what was ready for delivery and would have been delivered but for its stopping the operation of its sawmill, but also the number of cross-ties and quantity of lumber produced from the sawing of the timber, that was hauled by the appellees from the mill to the railroad as required by the contract. The written statement likewise set forth the value placed by the appellees upon the work and services performed by them under the contract and credited the appellant with all sums paid by it to the appellees under the contract, which left due the latter, as claimed, the amount for which they were given judgment.

We have been unable to find that the correctness of the estimates contained in the statement referred to was, or is, questioned by appellant's counsel.

We deem it unnecessary to undertake an analysis of the evidence. While it was in many respects conflicting, we incline to the opinion that, considered as a whole, it more strongly sustains the several contentions of the appellees than it does those of appellant. Moreover, it was by the chancellor deemed sufficient to authorize the judgment. And while, ordinarily, in an equitable action the

appellate court will not be bound by a chancellor's finding of fact, in a case of conflicting evidence great weight will, on appeal, be accorded such findings made by him; or where, on the whole evidence, the mind of the appellate court is left in doubt as to the truth, the chancellor's findings of fact will be accepted by it and his judgment based thereon allowed to remain undisturbed. Roberts v. Aker & Voght, 203 Ky. 468; Brown v. Holifield, 203 Ky. 473; Ratliff v. Adkins, 143 Ky. 447; England, et al. v. Crawford, 196 Ky. 661.

If the chancellor's finding of fact, as we believe, was authorized by the evidence, no error was committed by him in holding the appellees entitled on the *quantum meruit* to the $635.62 adjudged them. For, as declared in Madison-Jackson-Estill L. & D. Co. v. Coyle, 166 Ky. 108 (quoting from the syllabus):

"Where one party to a contract is prevented from fully performing it by an act of the other party, which compelled him to abandon it after a performance in part, for such partial performance, he may recover upon a *quantum meruit*. If this principle were not applied the party wrongfully terminating the contract would be allowed to benefit himself at the expense of the other." Escott v. White, 10 Bush 169; Moffatt v. Mastin, 6 T. B. Mon. 600; Tandy v. Asher, 9 R. 150.

We find no error in the chancellor's rejection of the appellant's counterclaim for damages.

Judgment affirmed.